UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK WISBAR, ET AL.** | |
| | **CIVIL ACTION** |
| **VERSUS** | |
| | **NO. 20-732-JWD-EWD** |
| **HEALTH CARE SERVICE CORP.** | |
| **D/B/A BLUE CROSS BLUE SHIELD** | |
| **OF TEXAS** | |

### RULING AND ORDER

This matter comes before the Court on *Defendant's Motion to Dismiss* (Doc. 11) filed by Defendant Health Care Service Corporation, a Mutual Legal Reserve Company operating in Texas as Blue Cross and Blue Shield of Texas ("Defendant"). Plaintiffs Frederick Wisbar and Taylor Wisbar (collectively, "Plaintiffs") oppose the motion. (Doc. 19.) Defendant filed a reply. (Doc. 22.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendant's motion is granted.

    **I.**    **Relevant Factual Background**

The following factual allegations are taken from *Plaintiffs' First Amended Complaint* ("*FAC*"), Doc. 10. They are assumed to be true for purposes of this motion. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).

Frederick Wisbar is a participant in an employee welfare benefit plan ("the Plan"), which is provided by his employer, YCI Methanol One, LLC. (*FAC* ¶¶ 6–7, Doc. 10.) Frederick's son, Taylor Wisbar, is a beneficiary under the Plan. (*Id*. ¶ 1.) Defendant Blue Cross and Blue Shield of Texas is the Plan Administrator. (*Id*. ¶ 2.)

This suit arises out of Defendant's denial of benefits for Taylor's "medically necessary" oral surgery. (*FAC* ¶¶ 12, 28, 47, Doc. 10.) Plaintiffs allege that Defendant, after pre-approving the surgery, "acted in an arbitrary, capricious, and an unreasonable manner in failing to pay the amounts due" for the procedure. (*Id*. ¶ 47; *see also* ¶¶ 7, 46.)

On January 23, 2019, Defendant sent Taylor's oral surgeon, Dr. Robert Regan D.D.S., a letter declining insurance coverage for the surgery because it "had not been provided sufficient clinical information." (*Id*. ¶ 15.) Dr. Regan then sent the requested information (*id*. ¶ 16); however, on February 6, 2019, Defendant sent Dr. Regan another letter denying benefits for the surgery because the services did not meet their medical policy criteria guidelines for coverage (*id*. ¶ 17).

Plaintiffs appealed this decision. (*Id*. ¶¶ 18, 19.) On April 30, 2019, Defendant approved Plaintiffs' "appeal request." (*Id*. ¶ 20.) Defendant sent a follow-up letter confirming that the surgery was "being approved as medically necessary as defined by the members healthcare benefit booklet." (*Id*. ¶ 21.)

Thereafter, on October 24, 2019, Defendant denied Taylor's request for the surgery for a second time because "the requested jaw surgery did not include the doctor's evaluation for his condition." (*Id*. ¶ 23.) Plaintiffs again appealed this denial, and their appeal was granted. (*Id*. ¶¶ 25, 26.) Subsequently, Defendant sent letters to both Dr. Regan and Taylor approving the surgery. (*Id*. ¶¶ 26, 27.)

On December 18, 2019, Dr. Regan performed the surgery on Taylor. (*Id*. ¶ 28.) Taylor's parents paid $15,000 to Dr. Regan for the surgery and submitted a receipt to Defendant. (*Id*. ¶¶ 29–30, 33.) According to the Complaint, "Plaintiffs and Dr. Regan's office were consistently denied payment of benefits that were due and owing under the Plan pursuant to not one, but two prior approvals of the surgical procedure." (*Id*. ¶ 32.)

In April of 2020, Rebecca Wisbar, Taylor's mother, provided documentation of the surgery performed, and in June of 2020, Defendant partially approved the claim. (*Id*. ¶¶ 38, 42.) On June 25, 2020, Defendant sent a letter to Frederick noting that approved benefits were $3,213.87 for the $15,000 surgery. (*Id*. ¶ 43.) In July of 2020, Frederick received an Explanation of Benefits regarding the surgery, which "noted that the only amount that could be subtracted from the $15,000.00 amount billed was $56.02[,] and the only amount covered . . . was $281.03[.]" (*Id*. ¶ 44.)

Plaintiffs subsequently filed this lawsuit seeking to recover the full $15,000 billed charge for Taylor's surgery, as well as attorney's fees and interest. (*Id.* ¶¶ 48–51.) Plaintiffs maintain that Defendant is liable under § 502(a)(1)(B) and § 502(a)(3) of ERISA, "for failure to pay benefits due under the Plan after approving said benefits through correspondence exchanged with the participant, beneficiary, and healthcare provider." (*Id.* ¶¶ 9, 49–51.)[1] Plaintiffs specifically allege that their claim is for the recovery of "past benefits, only, and does not include a claim for future benefits." (*Id.* ¶ 9.)

## II.    Rule 12(b)(6) Standard

In *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014), the Supreme Court explained "Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson*, 574 U.S. at 11 (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

---

[1] The Court refers to the monetary relief subsection of ERISA (codified at 29 U.S.C. § 1132(a)(1)(B)) as Section 502(a)(1)(B), and the equitable relief subsection of ERISA (codified at 29 U.S.C. § 1132(a)(3)) as Section 502(a)(3).

>The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

>Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. This standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

The Fifth Circuit further explained that all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson*, 764 F.3d at 502–03. The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted." *Id.* at 503.

4

**III.     Parties' Arguments**

  **A.  Defendant's Original Memorandum (Doc. 11-2)**

Defendant moves to dismiss Plaintiffs' § 502(a)(3) claim as impermissibly duplicative of their § 502(a)(1)(B) claim. (Doc. 11-2 at 3.) Specifically, Defendant argues that Plaintiffs may not assert simultaneous claims under § 502(a)(1)(B) and § 502(a)(3) in this case because these claims are based on the same facts, the same theory of liability (alleged improper denial of a benefit claim), and seek the same remedy (recovery of plan benefits). (*Id.*) Section 502(a)(3) is meant only to operate as a catch-all provision when there is no adequate remedy elsewhere. (*Id*. at 4.) "Underscoring the duplicative nature of Plaintiffs' two claims, the FAC does not separate facts or theories of liability into two separate Counts, but rather simultaneously pleads both ERISA claims throughout." (*Id*. at 3.) Thus, in accordance with controlling Fifth Circuit jurisprudence, § 502(a)(1)(B) is the exclusive remedy for a plaintiff seeking recovery of plan benefits, and the Plaintiffs' § 502(a)(3) claim should be dismissed. (*Id*. at 4–5.)

  **B.  Plaintiffs' Opposition (Doc. 19)**

In opposition, Plaintiffs contend that, given that this case is only in the early stages of litigation, their § 502(a)(1)(B) and § 502(a)(3) claims are permissively pled. (Doc. 19 at 6.) Plaintiffs cite *Bennett v. Louisiana Health Service & Indemnity Co.*, 450 F. Supp. 3d 686 (M.D. La. 2020) and *Peterson v. Liberty Life Ins. Co. of Boston*, 2016 WL 3849693 (N.D. Miss. July 13, 2016) to support their position that they are not precluded from simultaneously bringing claims under § 502(a)(1)(B) and § 502(a)(3) at the pleading stage. (*Id*. at 6–8.)  Plaintiffs continue:

> At this point in time, it is not unequivocally clear which section of ERISA this case may fall under as discovery has yet to proceed in any significant manner. However, under BCBSTX's theory, such a valid and reasonable position is untenable, and plaintiffs should be forced to roll the dice and possibly forfeit a valid cause of action. While it may be the law of the Fifth Circuit that a plaintiff cannot be ultimately seek claims under both 502(a)(3) and 502(a)(1)(B), what is clear by the

law of the Middle District of Louisiana is that at such an early stage of litigation Plaintiffs should be allowed to maintain causes of action under both 502(a)(3) and 502(a)(1)(B) until such a time that discovery has progressed to a point that a determination can be made as to whether the plaintiffs' cause of action falls under 502(a)(3) or 502(a)(1)(B).

(*Id*. at 8–9.)

Alternatively, Plaintiffs request leave to file an amended complaint to "specifically allege 502(a)(3) and 502(a)(1)(B) in the alternative as it is anticipated that Plaintiffs will be able to specify with more particularity which section they will proceed under following discovery. . . ." (*Id*. at 9.)

### C. Defendant's Reply (Doc. 22)

In reply, Defendant asserts that, under controlling Fifth Circuit jurisprudence, Plaintiffs cannot maintain simultaneous claims that are based on the same facts, the same theory of liability, and that seek the same relief. (Doc. 22 at 1.)

Additionally, the cases Plaintiffs rely on are distinguishable because in those cases the plaintiffs were seeking additional claims, such as breach of fiduciary duty, on top of a claim for recovery of plan benefits. (*Id*. at 2, 4.) In contrast, in this case, the only relief sought is the recovery of past due benefits under the Plan. (*Id*. at 4.)

Lastly, Plaintiffs should not be allowed leave to amend as any amendment would be futile for the reason stated above—Plaintiffs have an adequate remedy at law for their § 502(a)(1)(B) claim, thus they cannot succeed on their § 502(a)(3) claim for equitable relief. (*Id*. at 6–7.)

### IV. Discussion

#### A. Applicable Law

Section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA") authorizes a "participate" or "beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights

to future benefits under the terms of the plan." Additionally, § 502(a)(3) provides the proper mechanism for bringing an equitable relief claim in stating that "[a] civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) *to obtain other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]" (emphasis added.)

"Section 502(a)(1)(B) only empowers courts to award beneficiaries the benefits they are due 'under the terms of [their] plan,' and that benefits promised in [a summary plan description] but not contained within the plan itself are not benefits due 'under the terms of the plan.' " *Currier v. Entergy Corp. Emp. Benefits Comm.*, 2016 WL 6024531, at *3 (E.D. La. Oct. 14, 2016) (citing *CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011)). Accordingly, in *Amara*, the Supreme Court ruled in favor of the pension plan beneficiaries, who were "misled by an inaccurate summary plan description ('SPD') into accepting a reduction in benefits[,]" in allowing them to bring their claim under § 502(a)(3) because "the reformation of the plan was an equitable remedy not available under Section 502(a)(1)(B)." *Id.* (citing *Amara*, 563 U.S. at 445).

In *Varity Corp. v. Howe*, the Supreme Court explained that § 502(a)(3) "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." 516 U.S. 489, 512 (1996). The Court further articulated that it prohibited repackaging simultaneous claims under § 502(a)(1)(B) and § 502(a)(3) to prevent having "lawyers … complicate ordinary benefits claims by dressing them up in 'fiduciary duty' clothing." *Id.* at 514. The Court was concerned that if a plaintiff could repackage a denial of benefits claim into a breach of fiduciary duty claim, they "could avoid the deferential 'arbitrary and capricious' standard of review applied to denial of benefits claims under *Firestone Tire* [*&*

7

*Rubber Co. v. Bruch*, 489 U.S. 101 (1989)] that favors plan administrators, and instead avail herself to the 'rigid level of conduct' expected of fiduciaries." *Christine S. v. Blue Cross Blue Shield of New Mexico*, 428 F. Supp. 3d 1209, 1227 (D. Utah 2019) (quoting *Varity Corp.*, 516 U.S. at 513-14). Thus, under *Varity*, the point of inquiry is whether Plaintiffs' § 502(a)(1)(B) and § 502(a)(3) claims are duplicative or are pled in the alternative. *Id.* at 1226.

### B. Analysis

Defendant asserts that Plaintiffs' § 502(a)(3) claim is barred by their § 502(a)(1)(B) claim. (*See* Doc. 11-2 at 3–5.) With that, the Court cannot disagree. Again, both claims are made under the same theory of liability: the alleged improper denial of benefits after Defendant had pre-approved them. (*FAC* ¶ 9, Doc. 10.) And the *First Amended Complaint* clearly states that "[t]he claim herein is for past benefits, only[.]" (*Id.*)

As such, Plaintiffs' § 502(a)(3) claim—as currently pled—must be dismissed. *See, e.g.*, *Hollingshead v. Aetna Health Inc.*, 589 F. App'x 732 (5th Cir. 2014) (where the plaintiff's § 502(a)(3) claim was dismissed because the plaintiff already had an adequate remedy under § 502(a)(1)(B); the plaintiff had the benefit of limited discovery; and, the plaintiff's motion to amend was denied because it would be futile since he was already given the opportunity to amend); *Swenson v. United of Omaha Life Ins. Co.*, 876 F.3d 809 (5th Cir. 2017) (where the plaintiff's equitable relief claim under § 502(a)(3) was dismissed because ERISA's civil enforcement provision provided a mechanism to address the injury); *Rhorer v. Raytheon Eng'rs and Constructors, Inc.*, 181 F.3d 634 (5th Cir. 1999) (where the court dismissed the plaintiff's § 502(a)(3) claim because the predominate cause of action in the suit was to recover plan benefits and, since she had an adequate remedy, she could not simultaneously maintain a claim for breach of fiduciary duty); *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross Blue Shield of Georgia*,

892 F.3d 719, 733 (5th Cir. 2018) (where the Fifth Circuit affirmed the district court's dismissal of the § 502(a)(3) claim because it was indistinguishable from the § 502(a)(1)(B) claim and was "essentially claims for benefits denied.") .

The remaining question, however, is whether Plaintiffs should be granted leave to amend their complaint.

### C. Leave to Amend

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955) (quotations and citations omitted). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). One leading treatise has further explained:

> As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine

9

> conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016).

Here, Plaintiffs request leave to amend their Complaint. In their opposition, Plaintiffs ask the Court for leave to file an amended complaint to "specifically allege 502(a)(3) and 502(a)(1)(B) in the alternative as it is anticipated that Plaintiffs will be able to specify with more particularity which section they will proceed under following discovery. . . ." (Doc. 19 at 9.) On the other hand, Defendant argues that any amendment would be futile since Plaintiffs have an adequate remedy at law for their § 502(a)(1)(B) claim; thus, they cannot succeed on their § 502(a)(3) claim for equitable relief. (Doc. 22 at 6–7.)

At this early stage in the litigation, "the Court will act in accordance with the 'wise judicial practice' and general rule" and grant Plaintiffs leave to amend. *JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 642 (M.D. La. 2018); *see also Fetty v. Louisiana State Bd. of Private Sec. Examiners*, --- F. Supp. 3d ----, 2020 WL 520026, at *15 (M.D. La. Jan. 31, 2020) (deGravelles, J.) (citing *JMCB*, 336 F. Supp. 3d at 641–42); *Murphy v. Bos. Sci. Corp.*, 2018 WL 6046178, at *1 (M.D. La. Nov. 19, 2018) (deGravelles, J.) (reaching same result) (citing, *inter alia*, *JMCB*). Nevertheless, the Court cautions Plaintiffs that they must allege alternative, rather than simultaneous, theories of liability under § 502(a)(1)(B) for recovery of past benefits and § 502(a)(3) for equitable relief.

## V.    Conclusion

Accordingly,

**IT IS ORDERED** that *Defendant's Motion to Dismiss* (Doc. 11) filed by Defendant Health Care Service Corporation, a Mutual Legal Reserve Company operating in Texas as Blue Cross and Blue Shield of Texas, is **GRANTED**.

**IT IS FURTHER ORDERED** that all of Plaintiffs' claims against Defendant are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs shall be given twenty-eight (28) days in which to amend the complaint to cure the deficiencies. Failure to do so will result in the dismissal of these claims with prejudice.

Signed in Baton Rouge, Louisiana, on September 27, 2021.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**